UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOSE SAUCEDA-CONTRERAS,<br><br>　　　　　Petitioner,<br><br>　　　v.<br><br>MARION SPEARMAN,<br><br>　　　　　Respondent. | No. SA CV 15-1117-JAK (PLA)<br><br>**ORDER ACCEPTING FINDINGS,<br>CONCLUSIONS AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE** |

On July 19, 2016, the United States Magistrate Judge issued a Report and Recommendation, recommending that petitioner's Petition for Writ of Habeas Corpus be denied as untimely and that this action be dismissed with prejudice. On August 2, 2016, respondent filed objections to the Report and Recommendation. On August 2, 2016, petitioner, likewise, filed objections.

Although respondent raises no objections to the magistrate judge's recommendation, he nevertheless takes issue with the magistrate judge's observations regarding the merits of petitioner's Miranda claim. Specifically, respondent maintains that the magistrate judge's observations improperly rely on the Ninth Circuit's decision in Mays v. Clark, 807 F.3d 968, 978-79 (9th Cir. 2015). (See Resp.'s Objections at 2-3). Respondent contends that the magistrate judge erred in stating that Mays is binding precedent. (Id.). According to respondent, Mays was incorrectly decided because, in that case, the Ninth Circuit failed to give proper deference under

1  AEDPA to the state court's holding that the petitioner's request for counsel was ambiguous. (See
2  id. at 3). Instead, according to respondent, the Ninth Circuit contravened Supreme Court
3  precedent by finding that the state court unreasonably applied clearly established law as
4  determined by the Supreme Court based merely on the fact that the Ninth Circuit disagreed with
5  the state court's holding. (Id.). Consequently, in respondent's view, Mays's holding and its
6  application of the standard announced in Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct.
7  2266, 2273, 165 L. Ed. 2d 224 (2006), should be disregarded, as only decisions of the Supreme
8  Court are controlling in terms of what is clearly established law for purposes of AEDPA. (Id. at 3
9  (citing Lopez v. Smith, __ U.S. __, 135 S. Ct. 1, 4, 190 L. Ed. 2d 1 (2014)).

10  The Court need not debate the merits of respondent's argument regarding whether, in
11  Mays, the Ninth Circuit properly applied AEDPA. That issue is either for the Ninth Circuit to decide
12  en banc, if it elects to do so, or for the United States Supreme Court to decide, if it grants a writ
13  of certiorari in that case. But unless or until either of those two events occur, Mays is binding on
14  district courts within the Ninth Circuit -- and, indeed, on the Ninth Circuit itself. See In re Deitz, 760
15  F.3d 1038, 1049 (9th Cir. 2014) ("The Panel, like all courts of this circuit, must adhere to the
16  holdings in published opinions of the Court of Appeals unless those opinions are overturned by
17  the Supreme Court.") (citing United States v. Martinez-Rodriguez, 472 F.3d 1087, 1093 (9th Cir.
18  2007)).[1] In Mays, as the magistrate judge noted, the Ninth Circuit held that the state court
19  unreasonably applied clearly established law as determined by the Supreme Court in holding the
20  suspect's request to police to call his father "and have my lawyer come down here" was an
21  ambiguous invocation of his right to counsel. 807 F.3d at 978-79. Accordingly, when confronted
22  by indistinguishable facts, district courts within the Ninth Circuit are bound to reach the same
23  conclusion.

---

[1] The Ninth Circuit has also noted that a three-judge panel's opinion can be undercut by intervening higher authority "to such an extent that it has been effectively overruled by such higher authority and hence is no longer binding on district judges and three judge panels of this court." Miller v. Gammie, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Here, there is no such intervening higher authority between the Ninth Circuit's opinion in Mays and the magistrate judge's Report and Recommendation. On the contrary, Lopez, the Supreme Court case on which respondent relies, was issued a year *before* Mays was decided.

Petitioner in his objections makes no objection to the magistrate judge's statements pertaining to the merits of his Miranda claim, but, instead, raises several objections to the magistrate judge's analysis regarding whether the Petition was timely filed. Most of those objections are adequately addressed in the magistrate judge's Report and Recommendation. A few of those objections, however, warrant further discussion. First, petitioner challenges the magistrate judge's observation that petitioner could have sought assistance from his sister (or his other siblings) in filing a timely federal habeas petition. (See Pet.'s Objections at 3-4). The magistrate judge made this observation in rejecting petitioner's claim that he could not obtain help in filing a timely federal habeas petition because he feared attack from other inmates. (R&R at 12). Specifically, the magistrate judge noted that petitioner had failed to explain why he did not seek assistance from his sister, who had copies of all of petitioner's legal materials and who had maintained correspondence with petitioner's appellate counsel throughout the state appellate process. (Id.).

Petitioner maintains that, in fact, he made numerous attempts to enlist his sister's help both before and after the limitations period expired. (Id.). Moreover, petitioner notes that his sister attempted to assist him, but that she lacked the legal training to do so, lacked a sufficient understanding of the English language to do so, and lacked the financial ability to retain an attorney to represent petitioner in connection with a federal habeas petition. (Id.). To substantiate these facts, petitioner has submitted a declaration from his sister, in which she details, among other things, several unsuccessful attempts to aid petitioner that she and her siblings undertook. (See Pet.'s Objections, Exh.).

Neither petitioner's arguments, nor his sister's declaration, undercuts the magistrate judge's observations. Although petitioner argues that his sister could not comprehend the correspondence sent to her by petitioner's appellate counsel because that correspondence was written in English, that argument ignores appellate counsel's declaration, which states that she sent all correspondence in English and Spanish. (See Docket No. 20, Supp'l Opp., Exh. E ¶¶ 8-12). Moreover, appellate counsel declared that petitioner's sister requested that counsel send all relevant legal materials to her so that she could aid her brother. (See id. ¶ 9 ("His sister asked that

3

I send his briefs to her because he did not understand them.")). In any event, that petitioner's sister had limited proficiency in English did not prevent her from enlisting the help of friends, family members, or legal aid clinics to help her understand the legal materials that she asked petitioner's appellate attorney to send to her.

The Court also notes that, based on her declaration, it is clear that petitioner's sister was capable of seeking help from third parties -- and, in fact, did so -- in attempting to prove that petitioner was innocent. (See Pet.'s Objections, Exh.). Had she been inclined to do so, she could have sought assistance in filing a timely federal habeas petition. Instead, like petitioner, she focused her efforts in maintaining and attempting to prove petitioner's innocence. Although the Court in no way means to criticize or demean these efforts, they nevertheless show that petitioner's sister was capable of aiding petitioner (or enlisting the help of others to aid petitioner) in filing a timely federal habeas petition.

That petitioner's sister had no legal training, did not prevent her from assisting petitioner (or from enlisting the help of someone else to assist him) in filing a timely federal habeas petition. Indeed, the overwhelming majority of federal habeas petitions are filed by inmates who, like petitioner and his sister, have no legal training. The Ninth Circuit repeatedly has recognized that equitable tolling is not warranted simply because an inmate lacks legal training. See Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013 n.4 (9th Cir. 2009) ("[W]e have held that a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling") (citation omitted). There is no reason to reach a different conclusion for the family members of inmates, who, unlike the inmates themselves, have few or no obstacles in researching the process of how to file a timely petition or in enlisting the help of others to do so. Consequently, that petitioner's sister had no legal training and could not afford to retain an attorney does not affect the outcome. In short, petitioner has failed to show that he could not have sought help from his sister in timely filing a federal habeas petition.

4

Second, petitioner criticizes the magistrate judge's analysis as it pertains to petitioner's claim that he feared retaliation from other inmates due to the nature of petitioner's crime. (Pet.'s Objections at 2). Specifically, petitioner takes issue with the magistrate judge's statement that petitioner offered no proof of general or specific threats directed toward him. (Id.). According to petitioner, this reasoning is circular. Thus the reason he has not been threatened is because he has not disclosed to anyone the nature of his crime. (Id.). Petitioner maintains that the only way he could have shown proof of threats would have been to disclose to his fellow inmates the nature of his crime, which he claims would have jeopardized his safety. (Id.). But putting aside the lack of evidence of threats directed toward him, petitioner has offered no evidence to show that, as a general matter, prisoners who commit violent crimes against women are at risk of being attacked by their fellow inmates  Such unsubstantiated assertions do not warrant equitable tolling.

Moreover, petitioner's attempt to minimize the implications of granting equitable tolling under these facts is unavailing. According to petitioner, accepting his unsubstantiated claim of fear would not, as the magistrate judge suggested, have wide-ranging implications. He argues that there are few, if any, inmates who, like petitioner, are foreign nationals lacking both legal training and the ability to speak English and who have diligently sought assistance in proving their innocence. (Pet.'s Objections at 3). But petitioner ignores that, according to his own allegations, the only thing that prevented him from seeking available assistance from inmates was his supposed fear of being attacked by other inmates. Consequently, the other characteristics that he cites have little relevance to whether he is entitled to equitable tolling based on his purported fear. As the magistrate judge observed, accepting petitioner's unsubstantiated claims of fear would have wide-ranging implications.[2]

---

[2] Citing an inapplicable statute governing criminal cases, petitioner contends that the magistrate judge should have appointed an expert to aid petitioner in corroborating his claim that, in fact, prisoners convicted of committing violent crimes against women are routinely attacked in prison. (Pet.'s Objections at 2). He cites the same statute to argue that the magistrate judge erred in refusing to appoint a medical expert to substantiate petitioner's claim that he suffers from an unidentified mental impairment. (Id. at 6). However, as the magistrate judge previously explained in rejecting petitioner's request for appointment of a medical expert, federal courts are
(continued...)

5

1 Third, petitioner suggests that, based on the observations of petitioner's appellate counsel,
2 the magistrate judge should have developed the record to determine the nature and the extent of
3 petitioner's mental impairments. (See Pet.'s Objections 5-6). In Laws v. Lamarque, 351 F.3d 919,
4 921, 24 (9th Cir. 2003), the Ninth Circuit stated that further factual development may be required
5 when a petitioner makes a good-faith allegation that tolling is warranted based on a mental
6 impairment, depending on the sufficiency of the record that is before the district court.
7 Subsequently, in Orthel v. Yates, 795 F.3d 935, 940 (9th Cir. 2015), the Ninth Circuit explained
8 that when the record "is amply developed" and does not indicate that mental incompetence caused
9 the untimely filing, a district court need not further develop the factual record. There, the district
10 court ordered Orthel to provide the State with a complete copy of his medical and prison records,
11 which were subsequently lodged with the court. Id. As a result, the district court had all the
12 records it needed to conclude that Orthel's mental impairment did not warrant equitable tolling.
13 Id. at 941.

14 Here, as in Orthel, the record was sufficient to allow the magistrate judge to conclude that
15 petitioner's purported mental impairment did not warrant equitable tolling. As an initial matter,
16 petitioner never made a good-faith allegation that his supposed mental impairment warranted
17 equitable tolling. Rather, at most, he merely suggested the possibility that he might suffer from
18 an unidentified mental impairment. (See Docket No. 20, Supp. Opp. at 4 (stating that, based on
19 appellate counsel's observations, there were concerns about petitioner's competency and
20 "whether his IQ is below 70 making him mentally disabled")). Notably, in her declaration, appellate
21 counsel mentioned nothing regarding petitioner's IQ. Moreover, she never stated that he was
22 mentally incompetent or that he was "mentally disabled." Instead, she merely observed that
23 petitioner was uniquely unable to understand the appellate process.[3] (See id., Exh. E ¶ 10). This

---

[2](...continued)
not authorized to appoint and authorize payment for an expert solely to aid a federal habeas petitioner in prosecuting his petition. (See Docket No. 38).

[3] In her declaration supporting petitioner's objections, petitioner's sister never states, or even (continued...)

1 observation, which is the only evidence upon which petitioner relies, falls far short of a good-faith
2 allegation that petitioner suffers from a mental impairment. Compare with Laws, 351 F.3d at 922
3 (finding good-faith allegation of mental impairment warranting development of record where
4 petitioner, whose competency to stand trial was questioned, stated in verified petition that he
5 suffered from mental impairment and accompanied petition with prison psychiatric and medical
6 records); Orthel, 795 F.3d at 938 (petitioner's claimed mental impairment supported by
7 documentation showing that he had been involuntarily medicated caused district court to develop
8 record regarding impact of petitioner's mental impairment).

9     More importantly, petitioner -- who is represented by counsel -- was ordered to produce any
10 and all medical records substantiating his claim that he suffers from any kind of mental
11 impairment. (See Docket No. 34). In response, petitioner produced no records. Accordingly, the
12 Court presumes that no such records exist. Given that fact, there is no basis to order further
13 development of the record regarding petitioner's unidentified and unsubstantiated claim of a
14 mental impairment. In short, as the magistrate judge observed, petitioner has provided no
15 competent evidence supporting his claim that he has a mental impairment of any kind. Thus,
16 further development of the record is not required. Petitioner is not entitled to equitable tolling with
17 respect to his purported mental impairment.[4]

---

   [3](...continued)
implies, that petitioner suffers from any sort of mental impairment. Instead, she attributes any difficulty in petitioner's ability to understand the legal process to his limited education and his inability to speak English. (See Pet.'s Objections, Exh. ("Unfortunately, [petitioner] has a very low level of education, [sic] he only finished primary school. He doesn't understand or speak English[.] [T]his has been a strong barrier in preventing him from being able to communicate. I believe that my brother has all these limitations[.] [H]e doesn't understand his case, he is not a specialist[,] and [he] needs the help of professionals.")). Petitioner's sister also states that petitioner's purported limitations did not prevent him from seeking help from others. (Id. ("Although the language and education barriers have been extremely prejudicial for my brother, he has never stopped asking for help in [S]panish[.]")).

   [4] In his Objections, petitioner for the first time contends that he suffers from obsessive compulsive disorder. (See Pet.'s Objections at 7). There is, however, no evidence to support this contention. The only basis offered in support of this contention is that petitioner wrote hundreds of letters to the Mexican Consulate seeking assistance in proving his innocence. (Id.). Those
(continued...)

7

**CONCLUSION**

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file records herein, the Magistrate Judge's Report and Recommendation, and petitioner's and respondent's objections to the Report and Recommendation. The Court has engaged in a <u>de novo</u> review of those portions of the Report and Recommendation to which objections have been made. The Court concurs with and accepts the findings and conclusions of the Magistrate Judge.

ACCORDINGLY, IT IS ORDERED:

1. The Report and Recommendation is accepted.

2. Judgment shall be entered consistent with this Order.

3. The clerk shall serve this Order and the Judgment on all counsel or parties of record.

DATED: September 8, 2016

HONORABLE JOHN A. KRONSTADT
UNITED STATES DISTRICT JUDGE

---

[4](...continued) actions do not establish a mental disorder; indeed, petitioner later cites those same actions as evidence that he exercised diligence in attempting to challenge his conviction. (See <u>id.</u> at 8 ("Petitioner's writing hundreds of letters to the Consulate shows diligence on his part to receive legal help to show he is not guilty of the crime.")). Even if petitioner did, in fact, suffer from obsessive compulsive disorder, there is no basis upon which to conclude that this alleged impairment prevented him from filing a timely federal habeas petition -- particularly given that it did not prevent him from writing hundreds of letters to the Mexican Consulate seeking assistance in proving his innocence.